# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Diane Maria Foley Individually :
And as Personal Representative :
Of the Estate of James Wright Foley :
:
and :
:
John William Foley :
:
and :
:
Lt. Col. John Elliot Foley :
:     Civil Case No.:_____
and :
:
Mark Vincent Foley :
:
and :
:
Kathryn Foley Simpson :
:
                Plaintiffs, :
:
v. :
:
SYRIAN ARAB REPUBLIC :
Damascus, SYRIA :
                Defendant :
……………………………………………………:

## COMPLAINT

Plaintiffs bring this action pursuant to the provisions of the Foreign Sovereign

Immunities Act, 28 U.S.C. § 1602, *et seq.* (hereinafter "FSIA").

### Introduction

1.     This action arises out of the November 22, 2012 abduction of James Wright

Foley, his subsequent captivity and torture, as well as his beheading on or around August 19,

2014, all perpetrated by the Islamic State in Syria and the Levant (hereinafter "Daesh"[1]).  At all

times relevant to this Complaint, Daesh was operating with the material support of the Syrian

Arab Republic (hereinafter "Syria" or "Assad Regime").   Syrian President Bashar al-Assad

(hereinafter "Assad") and his security apparatus deliberately took steps to help create and

thereafter greatly assisted Daesh in its terrorist operations, which it used as a sham opponent in

the Syrian civil war to bolster Syria's negotiating power against Western powers threatening the

Assad regime.   Assad secretly cooperated with Daesh to destroy other opposition groups all the

while declaring war against "terrorists," and feigning meaningful participation in the struggle

against Daesh, and similar groups such as Al Qaeda.   At all times relevant to this Complaint,

Syria provided material support to Daesh, including but not limited to safe harbor, financial

support, provision of materiel, and military air support.   Over this same period, Syria also

provided intelligence and direct instructions to Daesh through embedded intelligence officers.

Without Syria's support, Daesh would not have grown into the terrorist organization that

abducted and murdered journalists such as James Foley.

     2.      The abduction and brutal murder of journalists such as James Foley also benefited

the Assad Regime in that these heinous acts shifted the focus of Western powers from removing

the Assad Regime in the aftermath of the Arab Spring to the destruction of Daesh with the Assad

---

[1] The terrorist group Daesh is also commonly referred to as the Islamic State of Iraq and the
Levant (ISIL), or sometimes as ISIS.  "Daesh" is the Romanization of the Arabic acronym for
ad-Dawlah al-Islāmiyah fīl-ʿIrāq wash-Shām.  Though its literal meaning is the same as the
English acronym "ISIL," many world leaders prefer to use the terms "Daesh" as it is somewhat
pejorative.  "Daesh" is a homophone with the Arabic words Daes ("one who crushes something
underfoot") and Dahes ("one who sows discord").  For similar reasons, we will refer to this
group as "Daesh."

Regime as a necessary ally or a lesser evil. The strategy has proved extremely successful, and most Western powers refocused their energy on combating Daesh.

3.      James Foley was the victim of "torture" and "extrajudicial killing," as defined in the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350 note, "hostage taking" as defined by Article 1 of the International Convention Against the Taking of Hostages, International Convention Against the Taking of Hostages art. 1, June 3, 1983, U.N. Doc. A/34/46, and suffered "personal injury" and "death" which are compensable under 28 U.S.C. § 1605A.

4.      James Foley was a loving son and brother, a journalist, and a philanthropist. After graduating from college, James Foley taught in an elementary school for four years, before teaching reading and writing to inmates as part of a vocational rehabilitation program. Foley pursued his interest in journalism by earning an MFA in writing in 2002, and well as a 2008 master's degree in journalism. From 2008-2009 Foley served as a reporting officer for USAID in Baghdad, Iraq. In 2010 he completed an eight-month stint as a freelance reporter embedded with U.S. troops in Afghanistan. In 2011, James Foley began covering the Libyan civil war for *GlobalPost*, an online news service. As a result of Western journalists' criticism of the Gaddafi regime James Foley was captured by Libyan forces and held captive for 44 days before being released. While he was relieved to have survived such a harrowing ordeal, during which a photojournalist was killed, Foley felt obligated to continue his work. He showed his bravery and determination by returning to Libya to document the downfall of Muamar Gaddafi, and later to cover the Syrian civil war. In an address to journalism students at his *alma mater*, the Medill School of Journalism at Northwestern University, Foley tried to explain his sense of duty:

> It's part of the problem with these conflicts. ... We're not close enough to it. And if reporters, if we don't try to get really close to what these guys—men, women,

American [soldiers], now, with this Arab revolution, young Arab men, young Egyptians and Libyans—are experiencing, we don't understand the world.

5.     The abduction of James Wright Foley, his subsequent captivity, torture, and beheading by Daesh, as well as Syria's material support for Daesh, form the factual basis for this action.

Plaintiffs state the following in support of their Complaint:

**The Parties**

**A.     The Plaintiffs**

6.     The Plaintiffs brought this action, by and through their counsel, in the individual capacity of each Plaintiff and, as appropriate, in their capacity as Personal Representative of the estate of James Wright Foley, for their own benefit, and for the benefit of and on behalf of all those legally entitled to assert a claim under the FSIA, state common law, and statutory law.

7.     Plaintiff Diane Maria Foley at all times relevant hereto was and is the mother of James Wright Foley.  Diane Maria Foley is a citizen of the United States of America who resides in the state of New Hampshire.  Diane Maria Foley can sue and be sued in this court.  Diane Maria Foley brings this suit in her own capacity and in her capacity as Personal Representative of the Estate of James Wright Foley.

8.     Plaintiff John William Foley at all times relevant hereto was and is the father of James Wright Foley.  John William Foley is a citizen of the United States of America who resides in the state of New Hampshire.  John William Foley can sue and be sued in this Court.

9.     Plaintiff Lt. Col. John Elliot Foley at all times relevant hereto was and is the brother of James Wright Foley.  Lt. Col. John Elliot Foley is a citizen of the United States of America who resides in the state of New Hampshire.  Plaintiff Lt. Col. John Elliot Foley can sue and be sued in this court.

10.     Plaintiff Mark Vincent Foley at all times relevant hereto was and is the brother of James Wright Foley.  Mark Vincent Foley is a citizen of the United States of America who resides in the state of New Hampshire.  Mark Vincent Foley can sue and be sued in this court.

11.     Plaintiff Kathryn Foley Simpson at all times relevant hereto was and is the sister of James Wright Foley.  Kathryn Foley Simpson is a citizen of the United States of America who resides in the state of Massachusetts.  Kathryn Foley Simpson can sue and be sued in this court.

## B.     The Defendant

12.     Defendant Syria is a foreign state that was designated a state sponsor of terrorism on December 29, 1979, pursuant to section 6 of the Export Administration Act of 1979, 50 U.S.C. App. § 2405, section 620A of the Foreign Assistance Act of 1961, 22 U.S.C. § 2371, and section 40 of the Arms Export Control Act, 22 U.S.C. § 2780.  Syria has remained so designated continuously ever since.

13.     According to the State Department's 2014 Country Reports on Terrorism:

> Syrian government awareness and encouragement for many years of violent extremists' transit through Syria to enter Iraq, for the purpose of fighting Coalition Troops, is well documented. Syria was a key hub for foreign fighters en route to Iraq. Those very networks were the seedbed for the violent extremist elements, including ISIS [Daesh], which terrorized the Syrian and Iraqi population in 2014 and – in addition to other terrorist organizations within Syria – continued to attract thousands of foreign terrorist fighters to Syria in 2014 . . . .

> As part of a broader strategy during the year, the regime still attempted to portray Syria itself as a victim of terrorism, characterizing all of its armed opponents as "terrorists."[2]

14.     The U.S. Department of State's position at all times relevant to this Complaint was that Assad is "actively seeking to bolster [Daesh] for his own cynical reasons," namely to

---

[2] U.S. DEP'T STATE, BUREAU OF COUNTERTERRORISM, COUNTRY REPORT ON TERRORISM 2014 288 (2015), http://www.state.gov/documents/organization/239631.pdf.

portray himself to Western powers as a partner in the war on terror, to destroy other anti-Assad militias, and to make his administration a more palatable alternative to Daesh for Syrian minority groups.[3]

15.     Syria has supplied strong economic support to Daesh since the group's inception, and as of early 2017 Syria's purchase of oil from Daesh represented its single largest source of revenue.[4]

## JURISDICTION AND VENUE

16.      Jurisdiction over the subject matter of this case arises under 28 U.S.C. §§ 1330(a), 1331, 1332(a)(2) and 1605A.

17.     Pursuant to the FSIA and related statutes, Syria is subject to suit in the courts of the United States as the material supporter of Daesh.  Syria's material support for Daesh caused the abduction, torture, and murder of James Wright Foley.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(4), which provides, in pertinent part, that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.

19.     28 U.S.C. § 1605A(c) provides a federal private right of action for U.S. citizens against a foreign state that is or was a state sponsor of terrorism, and also against any official, employee or agent of that foreign state while acting within the scope of his or her office,

---

[3] Ruth Sherlock et al., *US Accuses Assad Regime of Helping Islamic State by Targeting Rival Rebels in Strike*, TELEGRAPH (June 2, 2015), http://www.telegraph.co.uk/news/worldnews/islamic-state/11645434/US-accuses-Assad-regime-of-helping-Islamic-State-by-targeting-rival-rebels-in-strikes.html
[4] Feliz Solomon, *Oil and Gas Sales to the Syrian Regime are Now ISIS's Largest Source of Funds*, Report Says, FORTUNE (Jan. 20, 2017), http://fortune.com/2017/01/20/oil-gas-isis-syria-assad.

employment or agency, for wrongful death, personal injury and related torts caused by an act of torture or extrajudicial killing or the provision of material support and resources for such acts.

## THE RISE OF DAESH

20.     In 2004, following the U.S.-led invasion of Iraq, al-Qaeda in Iraq ("AQI"), led by Abu Musab al-Zarqawi ("Zarqawi"), became a leading force in the anti-American insurgency and sectarian war.  AQI, a precursor group to Daesh, distinguished itself through its military effectiveness, brutality against rival Sunni factions, and gruesome murders of U.S., European, and Shiite civilians.

21.     AQI's methods caused a backlash within Sunni enclaves, which formed militia groups that often cooperated with U.S. forces against AQI.  AQI eventually lost the support of al-Qaeda "central" and became stigmatized within the Iraqi insurgency and the Sunni community.

22.     Following its loss of influence in Iraq, in January 2006, AQI merged with several terrorist groups to create the Mujahadeen Shura Council.

23.     In June 2006, Zarqawi was killed by U.S. forces in Hibhib, Iraq.

24.     In October 2006, the Mujahadeen Shura Council proclaimed the formation of the Islamic State of Iraq ("ISI"), under the leadership of Abu Ayyub al-Masri and Abu Adullah al-Rashid al-Baghdadi.

25.     In April 2010, Abu Ayyub al-Masri and Abu Adullah al-Rashid al-Baghdadi were killed in a joint U.S.-Iraqi operation, and Abu Bakr al-Baghdadi ("al-Baghdadi") took over leadership of ISI.

26.     In April 2013, having merged with the al-Nusra Front and expanded into Syria, ISI adopted the name Islamic State of Iraq and the Levant, also widely known as ISIS, ISIL, and "Daesh."

27.     This Court has repeatedly found that prior to the rise of Daesh, Syria provided material support to AQI. *See Foley v. Syrian Arab Republic*, 249 F. Supp. 3d 186, 191-95 (D.D.C. 2017) (finding after a two-day hearing that Syria "provided material support to the Zarqawi Terrorist Organization's terrorist activity throughout the time period at issue in this case" and taking judicial notice of the same finding by this Court in *Thuneibat v. Syrian Arab Republic*, 167 F. Supp. 3d 22 (D.D.C. 2016)); *Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53 (D.D.C. 2008), *aff'd*, 646 F.3d 1 (D.C. Cir. 2011)).

28.     Syria, which has a decades-long history of using terrorist groups to achieve its foreign policy goals, has provided material support to Daesh through each iteration of the group, from AQI to Daesh, and each generation of leadership, from Zarkawi to al-Masri to al-Baghdadi, facilitating horrific terrorist attacks in Iraq and Syria.  When the Arab Spring came to Syria in January 2011, the Assad Regime came to rely on Daesh for its very existence, as described in greater particularity at paragraphs 27-39.

## SYRIA'S MATERIAL SUPPORT OF DAESH (AKA ISIS/ISIL)

29.     The Assad Regime deliberately facilitated the creation of Daesh from its precursor groups of ISI and the al-Nusra Front. The Assad Regime provided Daesh with material support at crucial times during its metastasis from an isolated group of terrorists into a quasi-terrorist "state" that subsequently kidnapped, tortured, and beheaded James Wright Foley. At all times relevant to this Complaint the Assad Regime was one of Daesh's primary material supporters.

30.     In January 2011, Syrian citizens began peaceful protests as a response to the region's "Arab Spring."  By March 2011, these protests evolved into massive anti-governmental opposition rallies and civil disobedience.  By April 2011, Assad's attempts to pacify the protestors had failed and the Syrian government deployed military forces to suppress the opposition movement.  This escalation failed.  As the situation spiraled out of control, the Syrian General Security Directorate deliberately released hundreds of Islamist extremists from prison from June to October 2011.[5]  Syria's plan was to seed its political dissent and opposition groups with a radical Islamic terrorist group so it could defeat the West's attempts to support the opposition groups.  These freed extremists constitute the majority of Daesh's current leadership.[6]

31.     According to a former member of the Syrian Military Intelligence Directorate, "the [Assad] regime did not just open the door to the prisons and let these extremists out; it facilitated them in their work, in the creation of armed brigades."[7]  According to this former Military Intelligence Directorate official, since at least the summer of 2011 Syria embedded officers within Daesh and its precursors, as well as within other Islamist groups operating in Syria.  Through these officers, Assad directs attacks against other Islamist groups or even against other branches of the Syrian security services.[8]  As this former intelligence officer reported, "the regime wanted to tell the world it was fighting Al Qaeda but the revolution was peaceful in the beginning so it had to build an armed Islamic revolt.  It was a specific, deliberate plan and it was

---

[5] Phil Sands et al., *Assad Regime Set Free Extremists from Prison to Fire Up Trouble During Peaceful Uprising*, NAT'L (Jan. 21, 2014), http://www.thenational.ae/world/syria/assad-regime-set-free-extremists-from-prison-to-fire-up-trouble-during-peaceful-uprising#full.
[6] Simon S. Cordall, *How Syria's Assad Helped Forge ISIS*, NEWSWEEK (June 21, 2014), http://www.newsweek.com/how-syrias-assad-helped-forge-isis-255631.
[7] Sands, *supra* note 3.
[8] *Id.*

easy to carry out.  There were strong Islamic tendencies to the uprising so it just had to encourage them."[9]

32.     Another former regime official reported that Syria supplied weapons to these freed prisoners, stating, "this is not something I heard rumors about, I actually heard the orders, I have seen it happening. These orders came down from [Military Intelligence] headquarters in Damascus."[10]

33.     As Affaq Ahmad, the former right hand to Syrian Air Force Intelligence Chief, General Jamil Hasad, explained, "actually, the [infiltrated] jihadist groups and brigades were very useful for the regime because they provided a justification for the regime's insistence on a military solution [to the civilian uprising], and provided some legitimacy under the cover of the War on Terror."[11]  Ahmad went on to explain that Daesh, acting as a foil for the Assad Regime, not only granted Syria some measure of international legitimacy, it also encourage Syria's non-Sunni minorities to rally around the Assad Regime.  Specifically, he stated that certain Islamist groups such as Daesh, "did not cross the red lines that were agreed on by the regime and their sponsors. This included the regime accepting the killing by those groups of Alawis and Druze in order to use that to convince these minorities to rally around the regime and hold on to it."[12]

34.     After Assad's creation of Daesh's precursor groups as a cynical political foil in 2011, Syria became one of Daesh's largest trading partners at a time when that terrorist organization had few other sources of commerce.

---

[9] *Id.*
[10] Michael Weiss & Hassan Hassan, ISIS: INSIDE THE ARMY OF TERROR (2015).
[11]  Michael B. Kelley, *It's Becoming Clear that Assad Fueled the Al-Qaeda Surge that has Kept Him in Power*, BUS. INSIDER (Jan. 21, 2014), http://www.businessinsider.com/assad-helped-build-al-qaeda-in-syria-2014-1.
[12] Michael Weiss, *Assad's No Enemy of al-Qaeda*, NOW (July, 31, 2013), https://now.mmedia.me/lb/en/commentaryanalysis/assads-no-enemy-of-al-qaeda.

35.     In 2013, Daesh fighters captured the oil fields of eastern Syria.  By January 2013, reports corroborated by The Guardian demonstrated that Syria was purchasing oil from Daesh and Daesh affiliates.[13]  Syria became a mass consumer for the oil that Daesh plunders, which is worthless without such a large-scale buyer.  Considering the array of forces aligned against Daesh, it had few potential buyers of its oil, limited to those within its immediate geographic proximity. Oil sales to the Assad regime were the principal source of revenue for Daesh at times relevant to this Complaint.

36.     Not only is the Assad Regime a customer for Daesh oil, it also provided the critical technical expertise required to run some of the oil and gas installations controlled by Daesh.

37.     Commenting on Syria's commercial and logistical support for Daesh, the UK Foreign Secretary stated that "Assad's 'war' on Isil [Daesh] is a sham" and that Assad "supports them financially."[14]  According to Danny Glaser, Assistant Secretary for Terrorist Financing at the U.S. Treasury Department, "the Assad regime needs the oil, ISIS needs the cash, and they're willing to do business even as they're fighting each other."[15]

38.     In October 2014, the Undersecretary of the Treasury Department, David Cohen, said that oil commerce is a "key source" of Daesh's operating revenue, earning approximately $1 million per day.[16]

---

[13] Kelley, *supra* note 9.
[14] *Revealed: The Oil Middleman Between the Syrian Regime and ISIS*, BUS. INSIDER (Mar. 7, 2015), http://www.businessinsider.com/revealed-the-oil-middleman-between-the-syrian-regime-and-isis-2015-3.
[15] *This World: World's Richest Terror Army*, (BBC Two television broadcast Apr. 22, 2015), http://www.bbc.co.uk/programmes/b05s4ytp
[16] *Syrian Regime, Iraqi Kurds Among Those Buying ISIS Oil: Official*, NBC NEWS (Oct. 23, 2014), http://www.nbcnews.com/news/world/syrian-regime-iraqi-kurds-among-those-buying-isis-oil-official-n232381.

39.     In March 2015, the European Union imposed sanctions against George Haswani, a Syrian businessman who, according to the implementing regulations, "provides support and benefits from the [Assad] regime through his role as a middleman in deals for the purchase of oil from [Daesh] by the Syrian regime."[17]

40.     Syria's support for Daesh extends beyond the commercial world.  In June 2015, the United States Department of State found that Syria was launching airstrikes on behalf of the Islamic State in its advance on the Syrian city of Aleppo.[18]  These airstrikes were part of a joint effort by the Assad Regime and Daesh to retake Aleppo from a coalition of Islamist and moderate rebel groups.[19]

41.     On June 1, 2015, U.S. State Department spokesperson Marie Harf stated that "[Assad] does not want to use his forces to root out [Daesh's] safe haven in Syria, but really on the contrary, is actively seeking to bolster their position for his own cynical reasons."[20]  Daesh defectors have also confirmed that the Assad's war on Daesh is a sham, reporting that they slept soundly knowing that Syrian airstrikes would be used to target their opponents, not them.[21]

---

[17] Council Implementing Regulation 2015/375, 2015 O.J. (L 64) 10 (EU),  http://eur-lex.europa.eu/legal-content/EN/TXT/PDF/?uri=CELEX:32015R0375&from=EN.

[18] Erica Wenig, *US Embassy Accuses Syrian Regime of Supporting ISIS Advance*, DAILY CALLER (June 2, 2015), http://dailycaller.com/2015/06/02/us-embassy-accuses-syrian-regime-of-supporting-isis-advance/; Tara Copp, *State: Syria's Assad Directly Supporting ISIS*, WASH. EXAMINER (June 2, 2015), http://www.washingtonexaminer.com/state-syrias-assad-directly-supporting-isis/article/2565466

[19] Alessandria Masi, *Syria's Coming Battle For Aleppo: It's Everybody Against Assad and ISIS*, INT'L BUS. TIMES (June 6, 2015), http://www.ibtimes.com/syrias-coming-battle-aleppo-its-everybody-against-assad-isis-1955134

[20] Ruth Sherlock et al., *US Accuses Assad Regime of Helping Islamic State by Targeting Rival Rebels in Strikes*, TELEGRAPH (June 2, 2015), http://www.telegraph.co.uk/news/worldnews/islamic-state/11645434/US-accuses-Assad-regime-of-helping-Islamic-State-by-targeting-rival-rebels-in-strikes.html

[21] Michael B. Kelley, *It's Becoming Clear that Assad Fueled the Al-Qaeda Surge that has Kept Him in Power*, BUS. INSIDER (Jan. 21, 2014), http://www.businessinsider.com/assad-helped-build-al-qaeda-in-syria-2014-1

## DAESH'S ABUDCTION, TORTURE, AND BEHEADING OF JAMES FOLEY

42.     On November 22, 2012, James Foley, British journalist John Cantlie, and Mustafa Ali, their Syrian translator, went to an internet café in Binnish, a town in northwestern Syria, to file their work. After about an hour they flagged a taxi for the 25-mile drive to the Turkish border.

43.     During that trip, their taxi was driven off the road by a van. Masked gunmen exited the van, screaming in foreign accented Arabic. They ordered the journalists to lie on the pavement, handcuffed them, and threw them in the van. They left Mr. Ali on the side of the road.

44.     From March to August 2013, Daesh held Foley in Aleppo. There Foley was tortured, including waterboarding and beatings that broke his ribs, which were not allowed to heal properly. Foley was also hung upside down by his shackles, leaving scars on his ankles.

45.     In September 2013 Foley was transferred to a Daesh training camp. In November 2013 Foley was transferred to an unknown location in Northern Syria, where he was again beaten for plotting an escape. In April 2014, Foley was transferred to a different unknown location in Northern Syria.

46.     At these various locations, Foley was held with European captives who, after their release, made public statements identifying their captors and torturers as Daesh members, several of whom are now facing prosecution, identifying Foley, and reporting the various forms of torture experienced by Foley.

47.     On an undisclosed date in the summer of 2014, the United States government mounted a rescue attempt but did not find Foley.

48.     On August 13, 2014, Foley's family and *GlobalPost* received communications from Daesh stating that Daesh would execute Foley. No demands were made.

49.     On August 19, 2014, Daesh released a video depicting the beheading of James Foley. His killer was later identified by various governments, including the United States, as Mohammed Emwazi (AKA Jihadi John), a U.K. national and Daesh member.

50.     Steven Sotloff, another American journalist held captive by Daesh appeared in the video in which James Foley is beheaded. In a horrible echo of the Foley beheading, Emwazi beheaded Steven Sotloff the following month and Daesh released a video of that murder.

### CLAIM I – ACTION FOR WRONGFUL DEATH
**(Under 28 U.S.C. § 1605A(c) and**
**State Common Law and State Statutory Law)**

51.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the forgoing paragraphs as if fully set forth herein.

52.     The Syrian Arab Republic's material support of Daesh caused the beheading of James Wright Foley .  He endured pain and suffering and his estate is entitled to economic damages due to his premature death.

**WHEREFORE**, Plaintiff the Estate of James Wright Foley demands that judgment be entered against Defendant for the damages suffered, including but not limited to pain, suffering, mental anguish, and pecuniary losses, in the amount of $10 million ($10,000,000) and pre-judgment interest, for the death of James Wright Foley on this Claim I, and their costs expended.

### CLAIM II – BATTERY
**(Under 28 U.S.C. § 1605A(c) and State Common Law)**

53.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the forgoing paragraphs as if fully set forth herein.

54.     From November 22, 2012, to around August 19, 2014, Daesh, with the material support of the Syrian Arab Republic, violently and forcefully committed illegal acts during the

abduction, and torture of James Wright Foley. These willful, wrongful and intentional acts constitute a battery upon the person of James Wright Foley, causing injury to him.

55.     As a direct and proximate result of the material support of the Syrian Arab Republic for the willful, wrongful and intentional act of Daesh,  James Wright Foley was injured in that he endured extreme mental anguish, physical injury, pain and suffering, all to his damage.

**WHEREFORE**, Plaintiff the Estate of James Wright Foley demands that judgment be entered against Defendant for the damages suffered, including but not limited to pain, suffering, mental anguish, and pecuniary losses, in the amount of $10 million ($10,000,000) and pre-judgment interest on this Claim II, and their costs expended.

## CLAIM III – ASSAULT
### (Under 28 U.S.C. § 1605A(c) and State Common Law)

56.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the forgoing paragraphs as if fully set forth herein.

57.     During, the abduction, and captivity of James Wright Foley, Daesh, with the material support of the Syrian Arab Republic, intentionally and willfully put James Wright Foley in fear for his life and apprehension of harm and injury as a direct result of the attacker's physical and mental abuse inflicted upon him.

58.     As a direct and proximate result of the material support of the Syrian Arab Republic of the willful, wrongful, and intentional act of Daesh,  James Wright Foley was injured in that he endured extreme mental anguish, physical injury, and pain and suffering, all to his damage.

**WHEREFORE**, Plaintiff the Estate of James Wright Foley demands that judgment be entered against Defendant for the damages suffered, including but not limited to pain, suffering,

mental anguish, and pecuniary losses, in the amount of $10 million ($10,000,000) and pre-judgment interest on this Claim III, and their costs expended.

### CLAIM IV – FALSE IMPRISONMENT AND KIDNAPPING
#### (Under 28 U.S.C. § 1605A(c) and State Common Law)

59.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the forgoing paragraphs as if fully set forth herein.

60.     With the material support of the Syrian Arab Republic, Daesh willfully and illegally abducted James Wright Foley.  The wrongful acts constitute false imprisonment and kidnapping upon the person of James Wright Foley, causing injury to him.

61.     As a direct and proximate result of the material support of the Syrian Arab Republic for the willful, wrongful, and intentional acts of Daesh,  James Wright Foley was injured in that he endured extreme mental anguish, physical injury, and pain and suffering, all to his damage.

**WHEREFORE**, Plaintiff the Estate of James Wright Foley demands that judgment be entered against Defendant for the damages suffered, including but not limited to pain, suffering, mental anguish, and pecuniary losses, in the amount of $10 million ($10,000,000) and pre-judgment interest on this Claim IV, and their costs expended.

### CLAIM V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, INCLUDING SOLATIUM
#### (Under 28 U.S.C. § 1605A(c) and State Common Law)

62.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the forgoing paragraphs as if fully set forth herein.

63.     The abduction, torture, and public beheading of James Wright Foley constitutes extreme and outrageous conduct with the intent to inflict emotional distress, including solatium, upon the victim and the victim's family.

16

64.     As a direct and proximate result of the material support of the Syrian Arab Republic for the willful, wrongful, and intentional act of Daesh, Plaintiffs the Estate of James Wright Foley, Diane Maria Foley, John William Foley, Lt. Col. John Elliot Foley, Mark Vincent Foley, and Kathryn Foley Simpson were injured in that they endured extreme mental anguish, physical injury, and pain and suffering, all to their damage.

**WHEREFORE**, Plaintiffs the Estate of James Wright Foley, Diane Maria Foley, John William Foley, Lt. Col. John Elliot Foley, Mark Vincent Foley, and Kathryn Foley Simpson demand that judgment be entered against Defendant for the damages suffered, including but not limited to pain, suffering, mental anguish, and pecuniary losses, in the amount of $10 million ($10,000,000) and pre-judgment interest, for each of them, on this Claim V, and their costs expended.

## CLAIM VI – ACTION FOR SURVIVAL DAMAGES
### (Under 28 U.S.C. § 1605A(c) and State Common Law and State Statutory Law)

65.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the forgoing paragraphs as if fully set forth herein.

66.     As a direct and proximate result of the material support of the Syrian Arab Republic for the willful, wrongful, and intentional act of Daesh, before his death, James Wright Foley suffered extreme bodily pain and suffering, entitling his Estate to compensatory damages.

**WHEREFORE**, Plaintiff the Estate of James Wright Foley demands that judgment be entered against Defendant for the damages suffered, including but not limited to pain, suffering, mental anguish, and pecuniary losses, in the amount of $10 million ($10,000,000) and pre-judgment interest, on this Claim VI, and its costs expended.

## CLAIM VII – ACTION FOR CONSPIRACY
### (Under 28 U.S.C. § 1605A(c) and State Common Law)

67.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the forgoing paragraphs as if fully set forth herein.

68.     Defendant Syrian Arab Republic did knowingly and willfully conspire with, and agree to materially support Daesh within the meaning of 28 U.S.C. § 1605A, which willfully and deliberately committed the acts of torture and extrajudicial killing which caused the personal injuries and death of James Wright Foley.

69.     For the reasons stated above, and having conspired to sponsor Daesh in its execution of this and other illegal acts, Defendant is liable to Plaintiffs for all damages in this civil action.

**WHEREFORE**, Plaintiffs the Estate of James Wright Foley, Diane Maria Foley, John William Foley, Lt. Col. John Elliot Foley, Mark Vincent Foley, and Kathryn Foley Simpson demand that judgment be entered against Defendant for the damages suffered, including but not limited to pain, suffering, mental anguish, and pecuniary losses, in the amount of $10 million ($10,000,000) and pre-judgment interest, for each of them, on this Claim VII, and their costs expended.

## CLAIM VIII – ACTION FOR AIDING AND ABETTING
### (Under 28 U.S.C. § 1605A(c) and State Common Law and State Statutory law)

70.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the forgoing paragraphs as if fully set forth herein.

71.     Defendant Syrian Arab Republic did knowingly and willfully provide substantial assistance and sponsorship to Daesh to support its attacks against U.S. citizens within the

meaning of 28 U.S.C. § 1605A, which caused the personal injury and death of James Wright Foley.

72.     For the reasons stated above, and having aided and abetted Daesh in these illegal acts, Defendant Syrian Arab Republic is liable to Plaintiffs for all damages in this civil action.

**WHEREFORE**, Plaintiffs the Estate of James Wright Foley, Diane Maria Foley, John William Foley, Lt. Col. John Elliot Foley, Mark Vincent Foley, and Kathryn Foley Simpson that judgment be entered against Defendant for the damages suffered, including but not limited to pain, suffering, mental anguish, and pecuniary losses, in the amount of $10 million ($10,000,000) and pre-judgment interest, for each of them, on this Claim VII, and their costs expended.

## CLAIM IX – PUNITIVE DAMAGES
### (Under 28 U.S.C. § 1605A(c))

73.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the forgoing paragraphs as if fully set forth herein.

74.     The actions of the Defendant and their agents, as set forth above were intentional and malicious and in willful, wanton, and reckless disregard of the rights and well-being of all Plaintiffs.  All of the acts of Daesh were facilitated by intelligence, funding, military protection, and arms provided by the Syrian Arab Republic.

75.     Daesh, with the material support of the Syrian Arab Republic carried out the abduction, torture, and beheading of James Wright Foley that resulted in his wrongful death. Under 28 U.S.C. § 1605A(c), Plaintiffs are entitled to an award of economic damages, solatium, pain and suffering, and punitive damages, and the same is hereby requested against Defendant in accordance with that provision.

**WHEREFORE**, Plaintiffs the Estate of James Wright Foley, Diane Maria Foley, John William Foley, Lt. Col. John Elliot Foley, Mark Vincent Foley, and Kathryn Foley Simpson demand that judgment be entered against Defendant for punitive damages in the amount of at least three times the amount of Plaintiffs' damages, including their full compensatory damages, which include pre-judgment interest, for these acts of abduction, torture, and extrajudicial killing, on this Claim IX, and their costs expended.

The award of punitive damages, as requested, is to punish Defendant for its conduct in supporting the murderous acts described herein and to serve notice that the rule of law can and will be used to deter state sponsorship of terrorism against citizens of the United States of America.  Defendant's outrageous actions cannot be tolerated by a civilized society and deserves the harshest condemnation of our ordered legal system.

## ADDITIONAL RELIEF REQUESTED

WHEREFORE, Plaintiffs request joint and several judgments against the Defendant as follows:

1.   Awarding to Plaintiffs compensatory, economic, pain and suffering and solatium damages against Defendant in amounts set forth herein and as shall be determined at trial;

2.   Awarding to Plaintiffs punitive or exemplary damages against Defendant, jointly and severally, according to proof to be presented at trial;

3.   Awarding to Plaintiffs prejudgment interest and post-judgment interest on all damages awards computed and calculated at the maximum rate allowable by law;

4.   Awarding to Plaintiffs an explicit and separately quantified adjustment of all damages awards that are based on amounts set in historical precedent, in order to offset the effects of inflation on the value of those awards;

5.   Awarding to Plaintiffs their costs, disbursements, expert fees and legal fees;

6.   Allowing a *lis pendens* notice of action to issue and be noted and enforced by the Court as against Defendant;

7.   Leave to amend this Complaint as the interests of justice may allow; and

8.   Granting any and all such further relief as the Court may deem just and proper.

DATED                                    Respectfully Submitted,

July 10, 2018                            s/Steven R. Perles_____
                                         Steven R. Perles (Bar No. 326975)
                                         Edward B. MacAllister (Bar No. 494558)
                                         Joshua K. Perles (Bar No. 1031069)
                                         Emily J. Amick (Bar No. 242018)
                                         PERLES LAW FIRM, PC
                                         1050 Connecticut Ave, NW
                                         Suite 500
                                         Washington, DC 20036
                                         Telephone: 202-955-9055
                                         Email: sperles@perleslaw.com